IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.

BEVERLY HODSON,

  Plaintiff,

v.

PAUL DENEAULT, M.D.; KAREN SUE MAHANY, CRNA; and ANESTHESIA CONSULTANTS, PROFESSIONAL CORPORATION,

  Defendants.

## COMPLAINT, JURY DEMAND, AND CERTIFICATE OF REVIEW

  Plaintiff, Beverly Hodson, by and through her attorneys, Leventhal & Puga P.C. and Robins Kaplan, LLP, submits her Complaint and Certificate of Review as follows:

### CERTIFICATION PURSUANT TO COLO. REV. STAT. § 13-20-602

  Pursuant to Colo. Rev. Stat. § 13-20-602(3), counsel certifies as follows:

  Counsel has consulted with licensed professionals with expertise in the areas of the alleged negligent conduct as set forth in Plaintiff's Complaint.

  The licensed professionals who have been consulted have reviewed the known facts relevant to the allegations of negligent conduct as set forth in Plaintiff's Complaint.

  Based upon review of such facts, the licensed professionals have concluded that the filing of the claims against the Defendants does not lack substantial justification within the meaning of Colo. Rev. Stat. § 13-17-102(4).

  The licensed professionals meet the requirements set forth in Colo. Rev. Stat. § 13-64-401.

## PARTIES, JURISDICTION, AND VENUE

1. This is a medical malpractice case involving the improper care and treatment of a patient undergoing an upper endoscopy. As a result of the improper care and treatment, the patient, Beverly Hodson, has suffered severe, permanent, and debilitating injuries.

2. This is a diversity action filed under the provisions of 28 U.S.C. § 1332(a)(1) by reason of the complete diversity of citizenship between the Plaintiff and the Defendants, and the amount in controversy exceeds $75,000.00.

3. Long arm jurisdiction exists pursuant to Colo. Rev. Stat. § 13-1-124(1)(b) because the tortious acts that gave rise to Plaintiff's claims occurred in the State of Colorado.

4. Venue is proper in this Court under 28 U.S.C. § 1391.

5. Ms. Hodson is a citizen of and resident of the State of South Dakota.

6. Paul Deneault, M.D. is a gastroenterologist licensed to practice medicine in the State of Colorado. At all times relevant to this case, he held himself out to the public as competent, careful, and experienced in the practice of medicine.

7. Upon information and belief, Dr. Deneault is a citizen of and a resident of the State of Colorado.

8. Karen Sue Mahany, CRNA is a certified registered nurse anesthetist, licensed to provide CRNA care in the State of Colorado. At all times relevant to this case, she held herself out to the public as competent, careful, and experienced in the practice of anesthesiology.

9. Upon information and belief, Ms. Mahany is a citizen of and a resident of the State of Colorado.

10. Anesthesia Consultants, Professional Corporation ("Anesthesia Consultants") is a Colorado professional corporation that was organized under the laws of the State of Colorado and formed on October 3, 1979.

11. The principal office of Anesthesia Consultants is located in Palm Beach Gardens, Florida.

12. According to the Colorado Secretary of State, Corporation Service Company is the registered agent of Anesthesia Consultants.

## GENERAL ALLEGATIONS

13. On December 8, 2015, Beverly Hodson saw her primary care provider, Sara Beth Diaz, D.O., at St. Anthony North Family Medicine with complaints of an upset stomach and heartburn.

14. Ms. Hodson had tried using ranitidine and omeprazole, but got no relief from her symptoms. Dr. Diaz noted that Ms. Hodson had been unable to eat more than 200-300 calories per day due to the severity of her reflux.

15. Dr. Diaz diagnosed Ms. Hodson with gastroesophageal reflux disease ("GERD").

16. Dr. Diaz asked Ms. Hodson to increase her dose of omeprazole, ordered labs, and referred Ms. Hodson for an esophagogastroduodenoscopy ("EGD").

17. On December 21, 2015, Ms. Hodson saw Ashley Kramer, PA-C, and Bruce Walker, M.D., at Rocky Mountain Gastroenterology.

18. Ms. Kramer and Dr. Walker advised Ms. Hodson to continue omeprazole and to follow a GERD diet. They also planned to do an EGD to check for evidence of reflux esophagitis, erosion, ulcers, gastris, and *H. pylori.*

19. On January 6, 2016, Dr. Paul Deneault with Rocky Mountain Gastroenterology performed an EGD with multiple biopsies at the St. Anthony North Hospital.

20. During the procedure, Dr. Deneault observed retained food and fluid in Ms. Hodson's stomach, suggestive of partial gastric outlet obstruction. Dr. Deneault removed the scope and noted that Ms. Hodson tolerated the procedure well.

21. Following the procedure, Dr. Deneault recommended that Ms. Hodson undergo a repeat EGD in eight weeks.

22. On February 29, 2016, Ms. Hodson returned to see Dr. Deneault at St. Anthony North for a repeat EGD.

23. Ms. Mahany was present for the procedure and provided the anesthetic care for Ms. Hodson.

24. On information and belief, at all relevant times, Ms. Mahany was an employee and/or agent with Defendant Anesthesia Consultants.

25. On information and belief, at all relevant times, Ms. Mahany was acting in the course and scope of her employment of Defendant Anesthesia Consultants.

26. While Ms. Hodson consented to "IV conscious sedation," her premedication included propofol by anesthesia.

27. In performing a repeat EGD, Dr. Deneault inserted the scope into the esophagus without difficulty and advanced it along as far as the duodenal cap. Dr. Deneault's procedure note explains that the rest of the stomach "had a fair amount of food present."

28. As the procedure continued, Ms. Mahany did not secure Ms. Hodson's airway.

29. Based on the gastric outlet obstruction in the duodenum with a large amount of residual food, Dr. Deneault felt dilation was "warranted" and dilated the area to 10, 11, and 12 mm.

30. As Dr. Deneault was withdrawing the scope, Ms. Hodson vomited "thick, dark, green emesis with chunks."

31. Dr. Deneault became concerned that Ms. Hodson had aspirated and admitted her to the St. Anthony Hospital North intensive care unit ("ICU") with a chief complaint of respiratory failure.

32. In the ICU, Ms. Hodson was sedated and ventilated given her diagnoses of aspiration pneumonitis and hypoxic respiratory failure.

33. An infectious disease consult on March 1, 2016, noted that Ms. Hodson was in septic shock and had acute hypoxic respiratory failure due to aspiration pneumonia.

34. On March 8, 2016, critical care service noted that Ms. Hodson developed a deep vein thrombosis ("DVT") in her arm, and that because her respirations were not improving, she would need a tracheotomy.

35. On March 18, 2016, nurses alerted ICU physicians that Ms. Hodson was not moving her left side, that she could not spontaneously move her left arm or foot, and that she could only make trace movements with her right arm and foot.

36. After a brain MRI, a neurology consult concluded that Ms. Hodson had suffered right sided embolic strokes.

37. On March 26, 2016, Ms. Hodson was transferred to the University of Colorado Hospital for evaluation of possible endophthalmitis.

38. Ms. Hodson remained at the University of Colorado Hospital through May 13, 2016. Her final diagnoses at discharge were "aspiration pneumonia, ARDS, right hemisphere embolic stroke, left endophthalmitis, bilateral UE and right internal jugular thrombosis, acute kidney injury, protein caloric malnutrition, stage II decubitus ulcer, hx of duodenal ulcer with gastric outlet obstruction, dysphagia."

39. Ms. Hodson continues to suffer significant disabilities, that have lessened her independence and greatly affected her activates of daily living, including but not limited to: impaired lung function resulting in difficulty breathing, fatigue, brain damage, weakness, balance difficulties, short-term memory impairment and difficulty learning new tasks. Ms. Hodson requires a cane or walker for mobility and can only walk about five minutes before needing to stop.

**FIRST CLAIM FOR RELIEF**
(*Medical Negligence – Dr. Deneault*)

40. Plaintiff incorporates be reference Paragraphs 1 – 39 of her Complaint.

41. Defendant Dr. Deneault was negligent in providing care and treatment to Ms. Hodson. His negligence includes, but is not limited to:

   a. The improper performance of an EGD;
   b. The failure to appreciate the danger of food in Ms. Hodson's stomach during an EGD;
   c. The failure to recognize the significance of Ms. Hodson's history of delayed gastric emptying;
   d. The failure to stop the EGD once he observed food in Ms. Hodson's stomach;
   e. The inappropriate decision to dilate the balloon with food in Ms. Hodson's stomach; and
   f. The failure to appreciate Ms. Hodson's risk of aspiration during the procedure.

42. As a direct and proximate result of Defendant's negligence, Ms. Hodson suffered injuries, damages, and losses, including, but not limited to the following:

    a. Permanent physical disfigurement/impairment;
    b. Past and future medical, hospital, pharmaceutical, and life care expenses;
    c. Past and future physical and mental pain and suffering, inconvenience, emotional stress, impairment of quality of life;
    d. Past and future impairment of the enjoyment and quality of life;
    e. Past and future loss of earnings and earning capacity; and
    f. Any other and further injuries, damages, and losses not specifically known at this time.

## **SECOND CLAIM FOR RELIEF**
### (*Uninformed Consent - Dr. Deneault*)

43. Plaintiff incorporates be reference Paragraphs 1 – 42 of her Complaint.

44. With respect to the care and treatment provided to Ms. Hodson, Defendant Dr. Deneault was negligent in failing to properly obtain her informed consent before the endoscopy.

45. Defendant Dr. Deneault failed to inform Ms. Hodson of the risks, benefits, and alternatives of undergoing an EGD, and specifically failed to provide Ms. Hodson with an explanation of the risks and alternatives to performing an EGD on a patient with food in the stomach and with a history of delayed gastric emptying.

46. A reasonable person in the same or similar circumstances as Ms. Hodson would not have consented to the EGD had she been given the information required for informed consent as explained above.

47. As a direct and proximate result of Defendant Dr. Deneault's failure to obtain informed consent, Ms. Hodson suffered injuries, damages, and losses, including, but not limited to the following:

7

    a.    Permanent physical disfigurement/impairment;

    b.    Past and future medical, hospital, pharmaceutical, and life care expenses;

    c.    Past and future physical and mental pain and suffering, inconvenience, emotional stress, impairment of quality of life;

    d.    Past and future impairment of the enjoyment and quality of life;

    e.    Past and future loss of earnings and earning capacity; and

    f.    Any other and further injuries, damages, and losses not specifically known at this time.

### THIRD CLAIM FOR RELIEF
#### (*Medical Negligence –CRNA Mahany*)

48.    Plaintiff incorporates be reference Paragraphs 1 – 47 of her Complaint.

49.    Defendant Mahany was negligent in providing care and treatment to Ms. Hodson. Her negligence includes, but is not limited to:

    a.    Providing improper anesthetia care to a patient undergoing an EGD;

    b.    The failure to appreciate the danger of observing food in Ms. Hodson's stomach;

    c.    The decision to proceed with an EGD without first securing the airway; and

50.    As a direct and proximate result of Defendant's negligence, Ms. Hodson suffered injuries, damages, and losses, including, but not limited to the following:

    a.    Permanent physical disfigurement/impairment;

    b.    Past and future medical, hospital, pharmaceutical, and life care expenses;

    c.    Past and future physical and mental pain and suffering, inconvenience, emotional stress, impairment of quality of life;

    d.    Past and future impairment of the enjoyment and quality of life;

    e.    Past and future loss of earnings and earning capacity; and

    f.    Any other and further injuries, damages, and losses not specifically known at this time.

## FOURTH CLAIM FOR RELIEF
(*Anesthesia Consultants - Respondeat Superior*)

51. Plaintiff incorporates be reference Paragraphs 1 – 50 of her Complaint.

52. At all relevant times, Ms. Hodson was under the care, supervision, and/or custody of employees, agents, and/or servants of Anesthesia Consultants, such as Ms. Mahany, each of whom were acting within the course and scope of their employment and/or their actual or apparent authority as agents of Anesthesia Consultants.

53. At all relevant times, the employees, agents, and/or servants of Anesthesia Consultants, each of whom were acting within the course and scope of their employment and/or their actual or apparent authority as agents of Anesthesia Consultants, were negligent in one or more respects, as described elsewhere herein.

54. Anesthesia Consultants is legally responsible for such negligent acts and omissions of its employees, agents, and/or servants.

55. As a direct and proximate result of the negligence of the employees, agents, and/or servants of Anesthesia Consultants, described elsewhere herein, Ms. Hodson suffered injuries, damages, and losses, including, but not limited to the following:

    a. Permanent physical disfigurement/impairment;
    b. Past and future medical, hospital, pharmaceutical, and life care expenses;
    c. Past and future physical and mental pain and suffering, inconvenience, emotional stress, impairment of quality of life;
    d. Past and future impairment of the enjoyment and quality of life;
    e. Past and future loss of earnings and earning capacity; and
    f. Any other and further injuries, damages, and losses not specifically known at this time.

56. The negligence of the non-physician employees, agents, and/or servants of Anesthesia Consultants is the negligence of Anesthesia Consultants under the doctrine of *respondeat superior*.

WHEREFORE, Plaintiff prays that judgment be entered in her favor and against the Defendants in an amount to be determined by the trier of fact, which will fully and fairly compensate Plaintiff for the suffered injuries, damages, and losses, both economic and noneconomic, compensatory and special, both past and future, pre and post-judgment interest as allowed by law, and for such other and further relief as this Court may deem appropriate.

PLAINTIFF DEMANDS A TRIAL BY JURY.

Respectfully submitted this 22nd day of December, 2017.

                LEVENTHAL & PUGA, P.C.

By: */s/ Brian N. Aleinikoff*
Bruce L. Braley, Atty. No. 48612
Brian N. Aleinikoff, Atty. No. 49238
Leventhal & Puga P.C.
950 South Cherry Street, Suite 600
Denver, CO 80249
Telephone: (303) 759-9945
Facsimile: (303) 759-9692
Email: bbraley@leventhal-law.com
Email: baleinikoff@leventhal-law.com

    -and-

Brandon Thompson
Robins Kaplan LLP
800 LaSalle Avenue
2800 LaSalle Plaza
Minneapolis, MN 55402
Telephone: (612) 349-8411
Facsimile: (612) 339-4181
Email: bthompson@robinskaplan.com
**ATTORNEYS FOR PLAINTIFF**

<u>Plaintiff's Address</u>
Beverly Hodson
2604 West 39th Street
Sioux Falls, South Dakota 57105